UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RONALD W. HARGIS and AMY HARGIS, | ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 1:08-cv-00339-RLY-TAB |
| WELLSPEAK ENTERPRISES, INC., d/b/a/ AJ ENGINEERING, and KOHLER COATING, | ) ) ) ) | |
| Defendants. | ) | |
| FLUTES, INC., | ) | |
| Intervening Defendant. | ) | |

**ENTRY ON AJ ENGINEERING'S MOTION FOR JUDGMENT AS A MATTER OF LAW, RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER FED. R. CIV. P. 50(b) AND ALTERNATIVE MOTION FOR NEW TRIAL UNDER FED. R. CIV. P. 59(a), and MOTION TO ALTER OR AMEND JUDGMENT**

This case was tried before a jury, which rendered a verdict in favor of Plaintiffs Ronald W. Hargis ("Mr. Hargis") and Amy Hargis ("Mrs. Hargis") (collectively, "Plaintiffs") in the amount of five million six hundred thousand dollars ($5,600,000.00). Defendant, Wellspeak Enterprises, Inc., d/b/a AJ Engineering ("AJ Engineering"), now moves for judgment as a matter of law under Federal Rule of Civil Procedure 50 ("Rule 50"), a new trial under Federal Rule of Civil Procedure 59(a) ("Rule 59(a)"), and to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) ("Rule 59(e)"). For the reasons set forth below, AJ Engineering's motions are **DENIED**.

1

**I.  Background**

This dispute arises from Plaintiffs' products liability claim that Mr. Hargis was injured on the job at Flutes, Inc., by a compression conveyor ("conveyor") designed by AJ Engineering as part of a corrugated paper production line due to a defect in the conveyor. Specifically, Plaintiffs claimed that the lack of a guard on the intake rollers of the conveyor constituted a design defect and rendered the machine unreasonably dangerous. The court held a three-day jury trial after no dispositive motions were filed. Herbert V. Kohler ("Mr. Kohler"), President of Defendant Kohler Coating ("Kohler Coating"), who designed the gluer that fed into the compression conveyor, provided extensive testimony on the subject, as did James George Wellspeak ("Mr. Wellspeak"), who designed the conveyor. The jury rendered a verdict for Plaintiffs and against AJ Engineering in the amount of five million six hundred thousand dollars ($5,600,000.00), and found that Plaintiffs should recover nothing from Kohler Coating.

At the close of Plaintiffs' case in chief, AJ Engineering moved orally under Rule 50 for judgment as a matter of law, claiming that Plaintiffs did not provide sufficient evidence to support a jury verdict in their favor. Plaintiffs responded orally and filed a written objection and response. AJ Engineering renewed its Motion at the close of all evidence and filed a written motion to which Plaintiffs filed a supplemental objection and response. AJ Engineering then filed a written renewal of its motion for judgment as a matter of law and in the alternative asked for a new trial pursuant to Rule 59(a). Finally,

AJ Engineering moved to alter or amend judgment under Rule 59(e). Plaintiffs filed a response to AJ Engineering's Rule 59 motions. The court addresses each of AJ Engineering's motions in turn.

## II.     Discussion

### A.     Rule 50 Motion for Judgment as a Matter of Law

After a party has been fully heard on an issue during a jury trial, the court may grant a motion for judgment as a matter of law if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). By taking AJ Engineering's motion for judgment as a matter of law under advisement during trial, "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." *Id.* at 50(b). When determining whether a legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party exists, the court must review the evidence in the light most favorable to the non-moving party. *Payne v. Milwaukee County*, 146 F.3d 430, 432 (7th Cir. 1998). In doing so, the court must avoid supplanting its views regarding witness credibility and the weight of the evidence for the views of the jury. *Tincher v. Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1129 (7th Cir. 1995) (citations omitted). The moving party has the burden of showing that no rational jury could have rendered a verdict against it. *Woodward v. Cor. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 926 (7th Cir. 2004). AJ Engineering has not met this standard.

AJ Engineering insists that without expert testimony, which it contends is a requirement in a design defect case, no evidentiary basis upon which a rational jury could find in favor of Plaintiffs exists. AJ Engineering submits that Mr. Kohler provided lay, not expert, opinion testimony, but that even if he was acting as an expert, his testimony does not meet the requirements of Federal Rule of Evidence 702 ("FRE 702"). Plaintiffs deny that design defect cases require expert testimony, but contend that even if expert testimony is required, Mr. Kohler and Mr. Wellspeak provided the necessary expert testimony. Furthermore, because AJ Engineering raised no objection to Mr. Kohler's qualifications or foundation for his opinions, Plaintiffs argue that AJ Engineering waived any argument that Mr. Kohler's testimony was inadmissible under FRE 702. Therefore, the issues before the court are (1) whether expert testimony is required in a design defect case, and (2) whether Mr. Kohler testified as an expert and (3) whether AJ Engineering waived any objection to his testimony.

### 1. Necessity of Expert Testimony

AJ Engineering contends that expert testimony is required under Indiana law in design defect cases, but that Mr. Kohler's testimony merely amounts to unsubstantiated lay opinion testimony; therefore, Plaintiffs have not satisfied their burden of proof as to defective design. In contrast, the court finds that expert testimony is not required in a product liability case if there is sufficient circumstantial evidence within the understanding of a lay juror from which the juror can draw a valid legal inference.

Under Indiana law, to prove a negligence-based product liability claim, a plaintiff must show, *inter alia*, that the product was defective. *Whitted v. Gen. Motors Corp.*, 58 F.3d 1200, 1206 (7th Cir. 1995). Expert testimony is not required to establish a defect "'if there is sufficient circumstantial evidence within a lay person's understanding that would constitute a basis for a legal inference and not mere speculation.'" *Owens v. Ford Motor Co.*, 297 F.Supp.2d 1099, 1103-04 (S.D.Ind. 2003) (quoting *Cansler v. Mills*, 765 N.E.2d 698, 706 (Ind.App. 2002); citing *U-Haul Int'l, Inc. v. Nulls Mach. & Mfg. Shop*, 736 N.E.2d 271, 285 n.3 (Ind.App. 2000)). "Where the existence of a defect depends on matters beyond the common understanding of a lay juror, however, admissible expert testimony is required to sustain the plaintiff's burden of proof on the question." *Id.* In the context of a design defect, the question is whether the design creates unreasonable danger according to general negligence principles. *Whitted*, 58 F.3d at 1206 (citing *Pries v. Honda Motor Co., Ltd.*, 31 F.3d 543, 545 (7th Cir. 1994)). A plaintiff must show that another design could not only have prevented the injury but was also cost-effective under general negligence principles. *Id.* (citations omitted).

While AJ Engineering cites design defect cases in which the court determined an expert was necessary in that particular case, none of the cases cited hold that expert testimony is required under Indiana law in every design defect case. *Owens*, 297 F.Supp.2d at 1103-04 n.2 (interpreting Indiana law, expert testimony is necessary in air bag design defect cases to show that an alternative design would be feasible and less

dangerous); *Whitted*, 58 F.3d at 1206 (finding ludicrous the notion that under Indiana products liability law a plaintiff could establish a design defect by his mere assertion of the existence of a defect); *U-Haul*, 736 N.E.2d at 285 (the failure of a specific component of a vehicle's brakes was beyond the knowledge and understanding of a lay juror; therefore, expert testimony was required).  The necessity of expert testimony to support a negligence-based product liability claim, be it a manufacturing defect or a design defect, depends on whether the issue is within the understanding of a lay juror.  *See Owens*, 297 F.Supp.2d at 1103-1104.  AJ Engineering fails to present a case that holds expert testimony is a requirement under Indiana law in design defect cases; therefore, if a plaintiff alleging a design defect presents sufficient circumstantial evidence within a lay person's understanding, then expert testimony is not mandatory where that evidence provides a basis for a legal inference that the design of a product is defective.  *See id.*

     Here, as distinguished from the cases cited by AJ Engineering in which the courts determined that an expert was necessary, the issue is not the design of an air bag or a specific brake component, but whether a conveyor without a guard created an unreasonable danger and whether a conveyor with a guard could have prevented the injury while being a cost-effective alternative.  The question then becomes whether such issues are within the understanding of a lay juror, which will determine whether expert testimony is necessary.  However, this question is moot, because, as explained below, Mr. Kohler provided expert testimony.

### 2. Mr. Kohler's Testimony

Plaintiffs contend that Mr. Kohler provided expert testimony based on his experience and observations in the corrugated paper manufacturing industry. AJ Engineering counters that Mr. Kohler designs glue machines and is not a qualified expert regarding compression conveyor design; therefore, his testimony should be considered lay opinion testimony.

Lay testimony consists of opinions that are rationally based on the witness's perception, helpful to a clear understanding of the witness's testimony or the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge. Fed. R. Evid. 701. On the other hand, under FRE 702 a witness who is qualified as an expert by "knowledge, skill, experience, training, or education" may testify in the form of an opinion if the expert's specialized knowledge will help the trier of fact understand the evidence or to determine a fact in issue, the testimony is based on sufficient facts or data and is the product of reliable principles and methods, and the expert reliably applied the principles and methods to the facts of the case. *Id.* at 702. The test under FRE 702 is flexible, and the factors do not constitute a definitive checklist or test. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) (citations omitted). The question is whether a particular expert "had sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case," and "no one denies that an expert might draw a conclusion from a set of observations based on

extensive and specialized experience." *Id.* at 155-56.

  Mr. Kohler is the president of Kohler Coating, which manufactures glue machines for corrugated paper production lines. (Kohler Transcript 4). He began working for his father at eight years old and attended engineering school for four and a half years, after which he began work at Kohler Coating. (*Id.* at 4-5). Kohler Coating has gluers in over one hundred production lines worldwide, and over the last fifteen years Mr. Kohler has observed the rollers on the conveyors attached to the gluers in those and other lines, every one of which has been guarded. (*Id.* at 18-19, 54). Mr. Kohler's opinion is reliable, because he is knowledgeable on nip guards and their function, and the nip guards he designs for his machines are similar to the nip guard at issue in this case. (*Id.* at 55-56). Although Mr. Kohler does not design compression conveyors, stacked rollers are ubiquitous on a production line, including compression conveyors. (*Id.* at 57). Adding to Mr. Kohler's reliability is the fact that Kohler designs and manufactures machinery with stacked rollers like the conveyors he has observed, including the AJ Engineering conveyor in this case, and Kohler puts nip guards on those machines. (*Id.* at 54-56). For these reasons, Mr. Kohler is qualified to testify as an expert regarding nip guards on machinery in corrugated paper manufacturing lines.

  Based on his observations of what he has seen in the industry, Mr. Kohler believes that such a guard would have prevented Mr. Hargis's injury and that lack of a guard, not an attempt to run product faster, is the reason Mr. Hargis was injured. (*Id.* at 60, 64). In

Mr. Kohler's opinion, installing a guard on the intake rollers of the AJ Engineering machine would not have impacted the running of that machine one way or the other. (*Id.* at 19-20, 54, 64). He ultimately concluded that he "would never design any machine of any type with two driven rolls in a nipped condition without an in-running nip guard." (*Id.* at 83).

Regarding the cost of a guard, Mr. Kohler testified that the design and installation costs three to five thousand dollars, with the majority of that expense allocated for the design and only a small cost for the materials. (*Id.* at 59). He testified that "it is far more cost effective from a benefit standpoint to my company to supply machinery that is fully guarded." (*Id.* at 84). Without objection from AJ Engineering, Mr. Kohler was asked the following question: "Based on your observations and your history within the industry, is it your observation that when companies like yourselves guard nip points on intake rollers, that the economic cost is far outweighed by the safety benefit that all potential users get?" (*Id.* at 85). Mr. Kohler responded that he agreed. (*Id.*).

Mr. Kohler's testimony did not consist of mere conclusions; rather, he repeatedly stated that his answers were based on his knowledge and experience in the corrugated paper manufacturing industry. Despite AJ Engineering's after-the-fact objections to Mr. Kohler's testimony, Mr. Kohler offered expert opinions based upon his thirty years of knowledge and experience with corrugated paper production lines on whether placing a guard on the compression conveyor was feasible and cost-effective, and whether the lack

9

of a guard was dangerous.  AJ Engineering claims in its written arguments that Mr. Kohler cannot be considered an expert, because he lacks an engineering degree and designs glue machines rather than compression conveyors; yet, at oral argument of its Rule 50 Motion during trial, AJ Engineering's counsel does not dispute that Mr. Kohler could be an expert.  (Transcript Vol. III at 577).  Instead, AJ Engineering argues that Mr. Kohler's expertise was not established for the jury; however, the review of his testimony shows otherwise.

Mr. Kohler's testimony that installing a guard on the compression conveyor was feasible came from his observation of many machines over the last fifteen years, all of which had guards at similar nip points.  Similarly, he claimed that the benefits of installing a guard outweighed the cost based on his knowledge and experience in designing guards for similar nip points.  These opinions are based on his specialized knowledge and experience, concern matters that are beyond the understanding of lay jurors, and could aid a jury's understanding of the facts of this case.  *See Kumho Tire Co., Ltd.*, 526 U.S. at 155-56.  A reasonable jury could infer from his testimony that the design of the compression conveyor without a guard was defective and therefore unreasonably dangerous.

Even if Mr. Kohler's testimony, standing alone, was found to lack the required indicia of reliability, Mr. Wellspeak's testimony corroborates Mr. Kohler's testimony. Mr. Wellspeak testified that not only was installing a guard on the compression conveyor

feasible, as Mr. Kohler testified, but a guard fashioned by Mr. Wellspeak actually was installed shortly after Mr. Hargis's accident for a mere $2800. (Wellspeak Transcript 65, 69, 73). Furthermore, the installation of a guard by Mr. Wellspeak after the accident negates the need for expert testimony to prove the cost-effectiveness of that alternative design. *Lapsley v. Xtek, Inc.*, 2012 WL 3055865, at *10 (7th Cir. July 27, 2012) (holding that "[e]xpert testimony is not needed to show the cost-effectiveness of a design actually used by the defendant both before and after the accident"). Mr. Wellspeak's testimony supports Mr. Kohler's testimony that the installation of a guard was feasible and negates the need for expert testimony proving the cost-effectiveness of the alternative design, which is evidence from which a jury could reasonably infer that the machine was unreasonably dangerous and therefore defective in its design.

### 3. Waiver

Finally, AJ Engineering contends that even if Mr. Kohler was an expert, his testimony does not satisfy the requirements of FRE 702. Plaintiffs respond that any objection under FRE 702 is waived due to AJ Engineering's lack of objection to Mr. Kohler's testimony during trial.

If a party does not object to testimony during the testimony itself, the objection is waived and cannot be raised for the first time in a motion for new trial or on appeal. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 609-10 (7th Cir. 2006) (defendants waived objection to expert testimony made in their renewed motion for judgment as a matter of

law after failing to object during the testimony itself). The failure to make a timely objection prevents the trial court from taking immediate action if necessary and thus acts as a waiver. *Jentges v. Milwaukee Cty. Cir. Ct.*, 733 F.2d 1238, 1243 (7th Cir. 1984) (rather than requesting corrective action in the form of granting a mistrial, the moving party should have made a contemporaneous objection to the testimony in question and requested an instruction to the jury to disregard that testimony).

      The nail in the coffin of AJ Engineering's arguments is that their objection is too little, too late. To the extent they are arguing that Mr. Kohler cannot be considered an expert witness because his testimony did not meet the requirements of FRE 702, their objection is untimely and the issue is waived. *See Naeem*, 444 F.3d at 609-10. AJ Engineering waited until after Plaintiffs rested their case in chief, which was well past the time of Mr. Kohler's testimony, to raise any objection to the testimony. AJ Engineering attempts to justify the delay in its objections by claiming that Mr. Kohler's testimony was not objectionable at the time it was given; however, its current objections are based on its allegation that Mr. Kohler's testimony was insufficient because it consisted of mere conclusions. (Reply 4). If AJ Engineering believed that Mr. Kohler was testifying in the form of unsupported conclusions, the proper time to object was at the time of the testimony in order to provide the court with an opportunity to take corrective action. *See Jentges*, 733 F.2d at 1243.

Although Mr. Kohler provided testimony regarding the facts of this specific case, he also provided several more generalized opinions that were based on his knowledge and experience in the corrugated paper manufacturing industry, a specialized area of expertise.  Moreover, he testified as to his opinions on machines with two rollers in general with no objection from AJ Engineering.  While he was not formally designated as an expert, his questioning and testimony was peppered with phrases such as "based on your knowledge and experience" and in multiple instances included his opinion as to the design of machines with stacked rollers in general.  (Kohler Transcript 18-19, 80-83). These phrases indicate that a witness is testifying as an expert and should have triggered objections by AJ Engineering.  Again, the appropriate time to object to such testimony was at the time it was given in order to allow the court to take corrective action; therefore, AJ Engineering waived any such objections by waiting until its Rule 50 Motion to raise its concerns.

Because Plaintiffs presented a legally sufficient evidentiary basis for a reasonable jury to find for them through, *inter alia*, the testimony of Mr. Kohler and Mr. Wellspeak, and in reviewing the evidence in the light most favorable to Plaintiffs, AJ Engineering's Rule 50 Motion for Judgment as a Matter of Law must be denied.

### B.     Rule 59(a) Motion for a New Trial

In the event AJ Engineering's Rule 50 Motion is denied, AJ Engineering requests a new trial under Rule 59(a) on the grounds that the jury's verdict is not supported by the

evidence, the damages awarded by the jury are grossly excessive, and to prevent a miscarriage of justice.  For the same reasons the court denied AJ Engineering's Rule 50 Motion, the court also denies its Rule 59(a) motion on the grounds that the jury's verdict was not supported by the evidence.  Although AJ Engineering also requests that the court order a new trial on the grounds that the verdict was grossly excessive and to prevent a miscarriage of justice, AJ Engineering provides no supporting arguments as to why the court should grant a new trial on these grounds.  AJ Engineering provides no example of awards assessed in similar cases for similar injuries as Plaintiffs' injuries or any guideline, for that matter, to ascertain whether the amount of damages awarded by the jury was excessive.  Accordingly, AJ Engineering's Motion for a New Trial is denied.

### C.     Rule 59(e) Motion to Alter or Amend Judgment

Like its Rule 59(a) Motion, AJ Engineering's grounds for its Rule 59(e) Motion to Alter or Amend Judgment are that the jury's verdict was rendered without legally sufficient evidence, the jury was instructed on failure to warn despite a lack of evidentiary support, the amount of the verdict was grossly excessive, and to prevent a miscarriage of justice.  AJ Engineering provides no arguments as to why the jury verdict is grossly excessive, what evidence regarding a failure to warn was lacking, and the basis for any miscarriage of justice.  Again, the motion is denied with regard to the legal sufficiency of the evidence for the reasons set forth above, and on the remaining grounds for lack of any supporting arguments.

### III.     Conclusion

For the reasons set forth above, AJ Engineering's Motion for Judgment as a Matter of Law (Docket # 148), Renewed Motion for Judgment as a Matter of Law (Docket # 166), Alternative Motion for New Trial (Docket # 166), and Motion to Alter or Amend Judgment (Docket # 168) are **DENIED**.


**SO ORDERED** this 1st day of August 2012.

                                                                     _____
                                                                     RICHARD L. YOUNG,  CHIEF JUDGE
                                                                     United States District Court
                                                                     Southern District of Indiana


Electronic copies to:

Michael Carr Adley
LAW OFFICE OF LIBERTY MUTUAL GROUP
michael.adley@libertymutual.com

Brian R. Bouggy
FROST BROWN TODD LLC
bbouggy@fbtlaw.com

Jeremy Michael Dilts
CARSON BOXBERGER
dilts@carsonboxberger.com

Georgia Lynne Hartman
LAW OFFICES OF LIBERTY MUTUAL GROUP
georgia.hartman@libertymutual.com

Douglas Alan Hoffman
CARSON BOXBERGER
hoffman@carsonboxberger.com

David T. Kasper
FROST BROWN TODD LLC
dkasper@fbtlaw.com

Matthew Reed King
FROST BROWN TODD LLC
mking@fbtlaw.com

Edward J. Liptak
CARSON BOXBERGER
liptak@carsonboxberger.com

Michael W. Phelps
KEN NUNN LAW OFFICE
mikep@kennunn.com

Randall R. Riggs
FROST BROWN TODD LLC
rriggs@fbtlaw.com